MILLER BREWING
COMPANY, Plaintiff,

v.

Robert LANDAU, Charles A. Lockwood,
Gerald Marsden, and Eisner & Lubin,
a partnership, Defendants.

No. 85-C-0258.

United States District Court,
E.D. Wisconsin.

Aug. 19, 1985.

Laurence C. Hammond, Milwaukee, Wis., and Irvin B. Nathan, Washington, D.C., for plaintiff.

Barry I. Fredericks, New York City, and Janice Rhodes, Milwaukee, Wis., for Landau.

Jon P. Christiansen, Milwaukee, Wis., for Lockwood.

Edward A. Hannan, Milwaukee, Wis., for Marsden and Eisner & Lubin.

## DECISION AND ORDER

WARREN, District Judge.

This case arises out of events which began in 1981 when the plaintiff, Miller Brewing Company (hereafter "Miller") hired defendant Robert Landau, President and sole shareholder of Robert Landau Associates, Inc. ("RLA"), a New York City marketing and promotional agency, to assist Miller in its marketing efforts. Miller contends that Landau and defendant Charles A. Lockwood, Executive Vice-President of RLA, made several trips to Milwaukee from 1981 to 1984 for the purpose of negotiating and executing promotional services contracts. Due to RLA's bankruptcy, it allegedly failed to perform as agreed under certain of these contracts.

According to the affidavit of Thomas B. Shropshire, Senior Vice-President, Treasurer and Assistant to the President of Miller Brewing Company, Miller began negotiating with RLA, represented by Landau and Lockwood, in November of 1983 for pro-

motional services contracts to be performed in 1984. These contracts were executed in Milwaukee and were governed by Wisconsin law. According to Shropshire's affidavit, a check for $2 million was presented to Landau and Lockwood in Milwaukee pursuant to these contracts.

In the spring of 1984, Miller became concerned about the financial condition of RLA. In order to satisfy Miller's concerns, RLA had the New York accounting firm of Eisner & Lubin, defendant herein, send a letter to Miller stating, in essence, that RLA was financially sound (a copy of that letter is attached hereto). The letter was signed by Gerald Marsden, a partner in Eisner & Lubin and a defendant in this action. Following receipt of this letter, Miller paid RLA an additional $1.3 million pursuant to one of the promotional services contracts.

On September 14, 1984, RLA filed proceedings in bankruptcy court under Chapter 11 and ceased performing its duties on behalf of Miller. On February 21, 1985, Miller filed the present action against Landau, Lockwood, Marsden and Eisner & Lubin in which Miller sets forth four separate claims. In Count I, Miller claims that the defendants engaged in a pattern of racketeering by which Miller was defrauded out of approximately $2 million. This claim is brought under the provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* Count II is a claim brought under the Wisconsin Organized Crime Control Act, Wis. Stat. §§ 946.80–946.87, and is based on allegations similar to those made in Count I. Count III is a common law fraud and civil conspiracy claim against all defendants, while Count IV is a negligence claim against defendant Eisner & Lubin.

All of the defendants have moved to dismiss the complaint for improper venue. In the alternative, the defendants request that the action be transferred to the District Court for the Southern District of New York.

As grounds for their motion, defendants Marsden and Eisner & Lubin claim (1) that they are not found, do not reside, and have no agents in this district; (2) that they have not transacted affairs in this district; (3) that the plaintiff's claim did not arise in this district; (4) that the operative facts alleged in the complaint occurred in New York; (5) that they reside in New York; and (6) that all of the witnesses, records and documents necessary for their defense are in New York.

Defendant Landau's motion is based on similar contentions, with one notable additional argument. Landau states that any affairs he conducted in Wisconsin were on behalf of RLA and not himself. It is Landau's further contention that any affairs he conducted in Wisconsin on behalf of RLA are irrelevant with respect to venue considerations.

Although he was twice granted additional time to answer or otherwise respond to the complaint, defendant Lockwood's motion to dismiss or to transfer venue merely consists of two pages in which he states that he will rely upon the briefs of his co-defendants as well as his own affidavit to support his motion. In that affidavit, Lockwood reiterates the position taken by Landau that his activities in Wisconsin were not undertaken on behalf of himself. Lockwood also states that his personal records and business records from RLA are now in Florida, where he lives, and that it would be inconvenient for him to transfer those records to either Milwaukee or New York.

In response, the plaintiff contends that the appropriate venue is the Eastern District of Wisconsin for the following reasons:

(1) Defendants Robert Landau and Charles Lockwood came to Miller's offices in Milwaukee on at least 30 separate occasions since 1981. Many of these visits were in furtherance of the defendants' scheme to defraud Miller. Shropshire Aff. ¶ 7.

(2) In the course of defendants' scheme to defraud Miller, Landau and Lockwood and other representatives of Robert Landau Associates, Inc. made hundreds of telephone calls to officials of Miller in

Milwaukee. Shropshire Aff. ¶ 7. *See also* Wolf Aff. ¶ 4 and Exhibits 2, 3, 4, 5 and 6.

(3) The 1984 Service Agreements, signed by defendant Landau, which served as the vehicle for defendants' fraud, were executed in Milwaukee and provided that Wisconsin law would govern any dispute. Shropshire Aff. ¶ 6.

(4) Contrary to a false affidavit filed by Robert Landau in support of his venue motion, Robert Landau flew to Milwaukee to receive personally Miller's check for $2 million issued in reliance upon defendants' fraudulent misrepresentations. Shropshire Aff. ¶ 6.

(5) The May 25, 1984 Eisner & Lubin "comfort letter" prepared by Gerald Marsden falsely attesting to the financial viability of the racketeering enterprise, RLA, was sent by defendants to, and considered by Miller, in Milwaukee. *Complaint* ¶ 31; Shropshire Aff. ¶¶ 9, 10.

(6) All of the remaining payments which Miller was defrauded into making were sent by Miller from Milwaukee. Shropshire Aff. ¶ 11.

(7) The damaging effects of the defendants' fraud were suffered by Miller in Milwaukee. *Complaint* ¶ 43; Shropshire Aff. ¶ 13.

Based on these contacts between the defendants and Miller in Milwaukee, and because the acts alleged to have been done by the defendants caused an economic harm to Miller in Milwaukee, Miller contends that its claim arose in the Eastern District of Wisconsin. Accordingly, Miller states that venue lies in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b). In addition, the plaintiff has asserted that venue may lie in this district under the provisions of RICO, 18 U.S.C. § 1965(a), in that defendants Landau and Lockwood transacted their affairs in this district.

For the reasons set forth below, the Court believes that venue is appropriate in this district primarily because the plaintiff's claim arose here. Thus, the Court will deny the motions to dismiss and will also deny the alternative requests to transfer this case to the Southern District of New York.

## I. VENUE UNDER RICO, 18 U.S.C. § 1965

Although the plaintiff's argument in favor of maintaining this action in this district is based mainly upon its contention that its claim "arose here" within the meaning of 28 U.S.C. § 1391(b), the Court will first consider plaintiff's alternative or, perhaps, supplementary argument that venue may lie in this district under the liberal provisions of the RICO venue statute, 18 U.S.C. § 1965(a) and (b). Subsections (a) and (b) of ¶ 1965 provide that

(a) Any civil action or proceeding under this chapter [18 USCS §§ 1961 *et seq.*] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter [18 USCS §§ 1964] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

The plaintiff claims, and the Court agrees, that defendants Landau and Lockwood both transacted their affairs in this district, and that venue is appropriate in this district as to them under § 1965(a). A person has transacted his affairs within a particular district when he has regularly conducted business of a substantial and continuous character within that district. *Hodgdon v. Needham-Skyles Oil Company*, 556 F.Supp. 75, 78 (D.D.C.1982); *King v. Vesco*, 342 F.Supp. 120, 122 (N.D.Cal. 1972). Both Lockwood and Landau made several trips to Milwaukee to meet with Miller personnel for the purpose of negotiating and executing the promotional services contracts entered into between Miller

and RLA. According to the Shropshire affidavit, Miller's records reflect that Landau met with Miller personnel in Milwaukee at least fourteen (14) times between 1981 and 1984. During that same period, Lockwood met with Miller personnel in Milwaukee on at least twenty-nine (29) separate occasions. In addition, Landau and Lockwood flew to Milwaukee in November, 1983, to receive a check from Miller in the amount of $2 million. Clearly, defendants Landau and Lockwood conducted business of a substantial and continuous nature in this district, and therefore transacted their affairs here as is meant in ¶ 1965(a).

Both of these defendants claim, however, that any business they transacted in this district was done on behalf of RLA, not themselves. They further claim that, in determining whether one has transacted his affairs in a certain district, only the personal affairs of the defendant are to be considered as opposed to any affairs he may have transacted on behalf of his employer. As authority for their argument, the defendants cite *Bulk Oil (USA), Inc. v. Sun Oil Trading Company*, 584 F.Supp. 36, 39 (S.D.N.Y.1983).[1]

The Court in *Bulk Oil* focused upon the language "transacts his affairs" in § 1965(a) and decided that it pertained to the personal affairs of the defendant employees and not the affairs conducted by them on behalf of their employer, Sun Oil Trading Company. 584 F.Supp. at 39. While that court's interpretation of the language in § 1965(a) may be viewed as a collary to the doctrine that employees ordinarily should be shielded from liability for acts done on behalf of their employers, this Court believes that there is ample reason for refusing to extend the holding in *Bulk Oil* to the circumstances present in this case.

■ First, defendant Landau was the president and sole shareholder of RLA; it would certainly be pointless if not impossible to distinguish his own affairs from

those he undertook on behalf of the business he owned and controlled. The same reasoning can be applied as well to Lockwood, the executive vice-president of RLA. Both defendants enjoyed positions within the business they operated such that the affairs of the business were, in reality, their own affairs. Any distinction made between their affairs and those of RLA would be superficial and misleading.

A second reason for rejecting the defendants' argument is that RLA appears to have been a grossly undercapitalized venture which has now gone bankrupt. Were the Court to extend the holding in *Bulk Oil* to this case, it would set a bad precedent of allowing corporate officers who transacted affairs on behalf of a shell corporation to avoid application of the venue provisions of § 1965(a) to themselves. This problem as it relates to personal jurisdiction issues was discussed by the court in *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2nd Cir.1981):

> In evaluating the fairness of subjecting an individual to personal jurisdiction for acts done in his role as a corporate employee, it is appropriate to focus not only on the fealty of the employee to the corporation in the performance of those acts, but also on the nature of the corporation and the individual's relationship to it. If the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken simply in his own interest. In such circumstances it will not advance notions of fairness to allow the owner of the corporation to invoke the protections of the fiduciary shield. As Judge Weinstein observed, obiter, in *Bulova Watch Co. v. K. Hattori & Co., supra* [508 F.Supp. 1322 (E.D.N.Y.1981)],

> > As the term "fiduciary shield" suggests, this is an equitable doctrine. It should be followed not [ ] mechanically but with a sound exercise of discretion. If, for example, the [corporation]

---

1. The defendants also cite an unpublished decision, *Ashland Oil, Inc. v. Arnett*, 84 Civ. 1324 (N.D.Ill. August 20, 1984), as further support for their argument. Beyond the fact that unpub-

lished decisions carry very little, if any, persuasive value, *Ashland Oil* merely cites *Bulk Oil* for the proposition at issue.

lacked sufficient assets to respond or if it were a shell utilized by an individual defendant for his own benefit, the balance of fairness might be tipped and jurisdiction over the individual might lie.

508 F.Supp. at 1348.

■ In deciding whether the corporation is a real or a shell entity, the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil. That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y. S.2d 585, 223 N.E.2d 6 (1966). When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. In determining whether a corporation for which an owner-employee acts is really "another," it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.

The Court has quoted the *Miller* decision at length because the analysis therein applies very well to the issue at hand, and because the approach taken by the Second Circuit is far more cogent and insightful than that undertaken by the court in *Bulk Oil.* Defendants Landau and Lockwood are attempting to veil the affairs they conducted in this district behind the cloak of the undercapitalized corporation they operated. To follow the ruling in *Bulk Oil* in this case would frustrate the purpose of § 1965(a) and render futile the plaintiff's attempt to maintain this action in this district where defendants Landau and Lock-

wood conducted numerous transactions which redounded to their own benefit.

■ While it is clear to the Court that venue may be maintained in this district as to Landau and Lockwood by virtue of § 1965(a), defendants Marsden and Eisner & Lubin did not have extensive contact with this district and cannot be said to have transacted their affairs here. The complaint alleges no other connections between Marsden, Eisner & Lubin and this district other than telephone calls placed to Miller personnel and a single letter sent on May 25, 1984 from Marsden to Miller. These contacts are not sufficient to establish venue under § 1965(a). *Follett College Stores Corp. v. Fernandez*, 587 F.Supp. 1051, 1054 (N.D.Ill.1984).

■ Although § 1965(a) cannot be used to assert that venue lies in this district as to Marsden and Eisner & Lubin, § 1965(b) is available to include them in an action brought in this district if "the ends of justice" so require. While the standards for determining whether an "ends of justice" finding should be made have not been well defined, at least one factor that should be considered is whether an alternative forum exists where venue would be proper as to all defendants. *Soltex Polymer Corp. v. Fortex Industries, Inc.*, 590 F.Supp. 1453, 1459 (E.D.N.Y.1984); *Farmers Bank of State of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1282 n. 8 (D.Del. 1978).

■ Since all of the defendants have transacted their affairs in the Southern District of New York, venue would be proper as to all of them in that district under § 1965(a). While this fact militates against making an "ends of justice" finding under § 1965(b), the Court opines that it should not be the sole consideration, especially where transferring the case would result in extraordinary delay or some other extreme prejudice against the plaintiff's interests.

■ This action is already several months old, and substantive discovery has been stayed throughout most of that time pending the completion of briefing and a

decision on the venue question. The Court believes that, were this action to be transferred to the Southern District of New York, an additional delay of several months, at least, would ensue. Since the defendants are all well represented by Milwaukee counsel and appear to be capable of defending this action in this district, the resulting harm to the plaintiff from transferring this case to New York would far outweigh the difficulties imposed upon the defendants by keeping it here. Therefore, were § 1965(b) the only means of maintaining the action in this district, the Court would find that the ends of justice require the presence of Marsden and Eisner & Lubin as defendants in this case.

■ It is neither the plaintiff's theory nor the Court's belief that venue lies in this district solely or primarily because of § 1965, however. The venue provisions of § 1965 are not exclusive; rather, they are supplemental to those found in 28 U.S.C. § 1391. Section 1391(b) provides that

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Since the Court's jurisdiction is not founded solely on diversity of citizenship, and because the defendants obviously do not reside in this district, a determination based on § 1391(b) that venue is proper in this district requires a finding that the plaintiff's "claim arose" here.

## II. VENUE UNDER § 1391(b): THE PLAINTIFF'S CLAIM AROSE IN THIS DISTRICT

■ The plaintiff asserts that its claim arose in this district because the economic harm allegedly caused by the defendants' acts was incurred by Miller in Milwaukee, where its corporate headquarters are located. In response, the defendants state that the Court should apply the "weight of the contacts" test to determine the locus of the claim. Under the latter approach, venue will lie "in any district in which a substantial part of the acts, events, or omissions occurred that give rise to the claim for relief." *Commercial Lighting Products v. United States District Court,* 537 F.2d 1078, 1080 (9th Cir.1976).

The plaintiff's "economic effect" argument was rejected by the United States Supreme Court in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Leroy,* the plaintiffs argued that a claim arose in Dallas because that is where the statute at issue would have had its impact on the plaintiffs. The Court stated that,

"... such a reading of § 1391(b) is inconsistent with the underlying purpose of the provision, for it would leave the venue decision entirely in the hands of plaintiffs, rather than making it 'primarily a matter of convenience of litigants and witnesses.'"

443 U.S. at 186–87, 99 S.Ct. at 2718, *quoting Denver & R.G.W.R. Co. v. Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967); *see also Medical Emergency Service Associates v. Duplis,* 558 F.Supp. 1312, 1315 (N.D.Ill.1983). Stating that "Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts," the Court concluded that:

"the broadest interpretation of the language of § 1391(b) is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim."

443 U.S. at 185, 99 S.Ct. at 2717.

In this case, the plaintiff's claims did not arise solely within the confines of one specific district. Events that are the subject of the plaintiff's claims transpired in both this district and the Southern District of New York.

■ Under the test proposed by the defendants, though, the Court believes that

venue is proper in this district because a substantial number of the acts which constitute the basis of plaintiff's claims did occur in Milwaukee. Defendants Landau and Lockwood made numerous trips to Milwaukee, negotiated contracts between RLA and Miller here, and received millions of dollars in payments pursuant to those contracts in this district. The critical letter sent by Marsden and Eisner & Lubin was also received by Miller in this district, although it was conceived and written in New York.

The defendants may be correct in asserting that whatever fraudulent acts they committed were devised in New York, but the success of their ventures depended upon the existence of the contracts negotiated in Milwaukee. The alleged scheme to defraud Miller also came to fruition in Milwaukee when Landau and Lockwood received a check for $2 million at the Milwaukee airport. Thus, the Court finds that the "weight of the contacts" favors the present forum over the Southern District of New York.

The criteria which the Supreme Court stated should be considered in situations where a claim arose in more than one district also weigh in favor of the present forum. Since Miller's corporate offices are located in Milwaukee, much of the evidence pertaining to the contracts at issue, as well as the witnesses involved in the contract transactions are located here. The attendance of any witnesses from elsewhere in the country may be compelled under the provisions of § 1965(d). The only factor weighing clearly in favor of transferring this case to the Southern District of New York is the convenience of the defendants. However, even that forum would be inconvenient for defendant Lockwood, who is now a resident of Florida.

Despite whatever arguments can be made with respect to the convenience of one forum as opposed to another, however, it is an undeniable fact that a substantial number of the actions which form the basis of the plaintiff's claims occurred within this district. Accordingly, the Court hereby finds that the plaintiff's claims did arise in this district, and the venue is proper here under 28 U.S.C. § 1391(b).

For the reasons stated above, the Court hereby DENIES the motions of defendants Landau, Lockwood, Marsden, and Eisner & Lubin for dismissal or transfer of venue. Since the venue question is now resolved, the Court also lifts the stay of substantive discovery that has been in effect in this case.