Dwight S. DODY and Winner's Choice, Inc., Plaintiffs,

v.

Howard B. BROWN, et al., Defendants.

No. 86–1304–CV–W–5.

United States District Court, W.D. Missouri, W.D.

April 10, 1987.

Andrew H. McCue, Mark D. Wasserstrom, P.C., Kansas City, Mo., for plaintiffs.

John R. Cullom, Kansas City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before the Court is defendants' motion to dismiss because of improper venue or, in the alternative, to transfer the case to the United States District Court for the Northern District of Florida. For the reasons set forth below, defendants' motion to dismiss is denied and defendants' motion to transfer is granted.

### Factual Background

Plaintiffs Dwight S. Dody ("Dody"), a resident of Clinton, Missouri, and Winner's Choice, Inc. ("Winner's Choice"), a Missouri corporation, bring this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO") based on an alleged fraudulent scheme involving the sale of distributorships for the lottery ticket dispensing machines to be operated within the State of Missouri.

According to the facts as set forth in plaintiffs' complaint, defendant Ramm Vending Promotions, Inc. ("Ramm") is a corporation organized and existing under the laws of Florida, with its principal place of business in Orlando, Florida. Defendant Howard B. Brown ("Brown") resides in the State of Florida and is a shareholder, officer and director of Ramm. Defendant Charles Arnold ("Arnold") resides in North Carolina and is also a shareholder, officer and director of Ramm.

During August, 1985, Arnold and Brown solicited investment capital from Dody and his wife, Nancy, at a seminar in Phoenix, Arizona. At this seminar, Arnold and Brown allegedly made numerous misrepresentations to plaintiffs for the purpose of obtaining investors to purchase "exclusive distributorships" for "lotto-game" vending machines from Ramm.

According to plaintiffs' petition, these misrepresentations in Phoenix included the following:

1. that Ramm was a lucrative investment opportunity from which Dody would earn a guaranteed return on his investment;

2. that other persons were actively pursuing the purchase of "exclusive territory" in Missouri;

3. that the "lotto tickets" were "computer-generated randomly selected probable winning combinations" based on information gathered from previous winners in various state lotteries;

4. that the vending machines would be made of industrial gauge steel with a fair market value in excess of $500.00; and

5. that the operation of the distributorship required minimal time and was "labor-nonintensive".

Upon plaintiffs' return to Clinton, Missouri, defendants exchanged numerous telephone calls with plaintiffs regarding inspection of defendants' operation in Florida. According to plaintiffs, defendants Brown and Arnold reaffirmed their misrepresentations regarding the profitability, location selection, legality and product quality. In reliance on these misrepresentations, plaintiffs visited defendants' offices in Orlando, Florida shortly thereafter.

According to plaintiffs' complaint, defendants Brown and Arnold continued to recite to plaintiffs in Florida the advantages of owning and operating a Ramm distributorship. Plaintiffs were presented with a proposed distributorship agreement ("agreement"). Plaintiffs did not enter into an agreement with defendants while in Florida, but returned to Missouri to further consider defendants' offer.

During this period, Dody formed Winner's Choice in Missouri for the purposes of implementing and administering the distributorship. Plaintiffs likewise received further telephone calls from defendants Brown and Arnold in which they continued

to insure plaintiffs of the profitability, legality, location selection and product quality of defendants' investment package.

Plaintiffs then altered the terms of defendants' standard distributorship agreement, signed it on behalf of Winner's Choice, and mailed it back to defendants in Florida. Defendant Brown thereafter modified the contract, signed it on behalf of Ramm, and returned the modified agreement to Dody in Missouri. By an accompanying letter, Brown requested Dody to acknowledge his assent to the modified agreement by initialing and dating the changes and returning a fully executed copy of the agreement to Brown in Florida. Dody accepted the agreement as modified and returned it by mail to Florida.[1] Pursuant to the terms of the agreement, Dody alleges that he made three separate wire transfers, totaling $144,800.00, to defendants in Florida. Plaintiffs further contend that on November 7, 1985, defendants shipped to Missouri a sample machine that was to be used by plaintiffs in attempting to secure retail locations for their vending machines.[2] The remaining sample machines were sent to plaintiffs in Illinois due to the delay of the Missouri lottery.

Plaintiffs allege further that in order to delay discovery by plaintiffs of defendants' fraudulent practices on them in Missouri, defendants agreed to grant plaintiffs an exclusive limited territory in Chicago, Illinois. Such agreement was negotiated by telephone on about November, 1985, and was included as an "Exhibit" to the original agreement. Plaintiffs claim that defendants knew at the time they contracted with plaintiffs that another distributor existed for plaintiffs' "exclusive territory" in Chicago.

The distributorship proved to be impractical during its temporary operation in Illinois. Thereafter, plaintiffs returned to Missouri and attempted, by means of telephonic and postal communication, to rescind the agreement. Defendants allegedly refused to cooperate with plaintiffs and this lawsuit ensued.

Defendants now move to dismiss this action or, in the alternative, seek to transfer this case to the United States District Court for the Northern District of Florida, alleging that venue in this district is improper under either of three applicable venue provisions, 18 U.S.C. § 1965(a) (Venue for RICO actions), and 28 U.S.C. § 1391(b) and (c). In support of their motion, defendants argue that: (1) none of the defendants reside or are incorporated in Missouri; (2) none of the defendants own any property, either real or personal, in Missouri; (3) none of the defendants have an office or an agent in Missouri; (4) none of the defendants have ever conducted business within this district; and (5) none of the defendants have negotiated any sales agreements or contracts within this district.

In opposition to defendants' motion, plaintiffs argue that venue is proper, both under 18 U.S.C. § 1965 and 28 U.S.C. § 1391, since defendants clearly have transacted business within this district and since plaintiffs' claim arose here in Missouri.

### Discussion

#### A. Venue

Plaintiffs rely on 18 U.S.C. § 1965 and 28 U.S.C. §§ 1391(b) and (c) as a basis for venue. Section 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the District Court of the United States for

---

1. Paragraph 10.2 of the final agreement reads as follows:

 "*Governing Law.* This agreement shall be deemed executed in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida ..."

 Dody alleges that one of the alterations to the initial proposed distributorship agreement was Dody's scratching out this Florida forum selection clause. However, this clause remained intact in the agreement that was finally executed.

2. Defendants contend that the machines in question were sent to plaintiffs in Illinois and not Missouri. However, in deciding the question of the defendants' contacts with this district for venue purposes, the Court will accept as true the facts pleaded in plaintiffs' complaint. Thus, the Court will assume that at least one of the machines were delivered from Florida to Missouri on November 7, 1985.

any district in which such person resides, is found, has an agent, or *transacts his affairs.*" (emphasis added).

Section 1391(b) provides that: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or *in which the claim arose ...*" (emphasis added). Section 1319(c) provides that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or *is doing business ...*" (emphasis added).

Plaintiffs concede that where defendants raise an objection to venue, the burden is upon plaintiffs to prove proper venue. *See e.g. Pfeiffer v. International Academy of Biomagnetic Medicine,* 521 F.Supp. 1331, 1337 (W.D.Mo.1981). In this case, the Court concludes that plaintiffs have failed to demonstrate that venue is proper in this district under either 18 U.S.C. § 1965(a), 28 U.S.C. §§ 1391(b) or 1391(c).

### 1. *Venue under 18 U.S.C. § 1965(a)*

■ Plaintiffs argue that venue is proper under § 1965(a) since defendants have clearly "transacted their affairs" within the Western District of Missouri. As noted by plaintiffs, a person transacts his affairs within a particular district when he *regularly* conducts business of a *substantial* and *continuous character* within that district. *Miller Brewing Company v. Landau,* 616 F.Supp. 1285, 1288 (E.D.Wis. 1985). *See also Hodgdon v. Needham-Skyles Oil Company,* 556 F.Supp. 75 (D.C. D.C.1982). (In order for venue to be proper under RICO venue provision, a defendant must regularly carry on a business of a substantial and continuous character within the district). Thus, plaintiffs must prove that defendants have regularly engaged in some significant and substantial activities in the Western District in order to show that venue is proper under § 1965(a).

■ Plaintiffs argue that defendants transacted business of a substantial and continuous nature within this district by claiming that defendants exchanged numerous phone calls with plaintiff in this district, the agreement at issue was executed in this district, payment was effectuated in Missouri by means of a wire transfer to defendants in Florida, and the effects of defendants' alleged fraud were felt here. Plaintiffs acknowledge, however, that other than the acts which give rise to this cause of action, defendants have not transacted any other business within the Western District of Missouri. Thus, the issue to be decided is whether these acts alone are sufficient, in and of themselves, to constitute regular, substantial and continuous business activity within this district. The Court concludes that it does not.

Plaintiffs have cited no cases which stand for the proposition that making a few telephone calls from outside the district to a person within the district constitutes transaction of any business *within* this district, let alone business of a regular, substantial and continuous nature. It is clear that none of the defendants are residents or incorporated in Missouri, have no agents or offices in Missouri, and have no property, real or personal, in Missouri. Nor do plaintiffs contend that defendants ever conducted any business in Missouri other than the transaction in question. Defendants' contacts are more akin to those of the defendants in *Follett College Stores Corp. v. Fernandez,* 587 F.Supp. 1051 (N.D.Ill. 1984), in which the Court transferred the case for lack of venue under the RICO venue provision.

In *Follett College Stores Corp.,* plaintiff, a bookstore, sued some of its employees under RICO, alleging that defendant employees used their control over plaintiff's bookstores to falsify accounting procedures and reports for store operations, manipulated and misrepresented store inventory and used assets of plaintiff's bookstores for their own personal use. Plaintiff argued that the RICO Act claim arose within this district since this was where false and misleading documents were received through the mail and where telephone calls were received from defendants as part of an alleged conspiracy and scheme to defraud plaintiff. 587 F.Supp. at 1052.

The Court held that since virtually all of the alleged activity concerning plaintiff's cause of action took place outside of the district, then venue within that district would be improper. *Id.* at 1053. The Court specifically concluded that the only contacts with the district involved document mailings and telephone calls originating from outside of the district, and deemed such contacts to be minimal. *Id.*

In the instant case, the only contacts that defendants had with this forum are telephonic communications made by defendants from *outside* of this district, mailings made from *outside* of the district, and the shipment of one sample machine to Missouri. Plaintiffs were solicited by defendants Brown and Arnold while attending a seminar in Phoenix, Arizona. Plaintiffs then left Missouri and went to Orlando, Florida to inspect the defendants' operation and to negotiate the terms of the agreement. While plaintiffs argue that the agreement was executed in Missouri, the plain language of the contract itself provides that the contract shall be deemed to be executed in Florida and shall be governed by the laws of Florida. Therefore, the only business affairs, if any, that could have conceivably been transacted by defendants that have any connection with this district were the telephone calls and mailings that were done outside of this district. Thus, the Court concludes that such activity does not rise to the level of regular, substantial and continuous activity within the district so as to satisfy § 1965(a)'s transaction of affairs requirement. *See also Eaby v. Richmond*, 561 F.Supp. 131, 140 (E.D.Pa.1983) (allegations that engineer and petroleum geologists purportedly wrote misleading reports about mineral leases in another district and that codefendant premised its own intradistrict misrepresentations on those reports failed to satisfy venue requirement that defendant engage in some significant act pursuant to conspiracy in challenged district).

### 2. *Venue under 28 U.S.C. § 1391(b)*

Plaintiffs also argue that venue properly lies in this district under 28 U.S.C. § 1391(b), claiming that this is the district in which "the claim arose." For the reasons set forth below, the Court concludes that plaintiffs' claim arose in Florida and not in the Western District of Missouri.

Before deciding whether plaintiffs' cause of action arose in Arizona, Missouri or Florida, the Court must first attempt the very difficult task of determining the correct standard to apply in deciding where a claim arises under § 1391(b). This task is extremely difficult because there is great confusion amongst the circuits as to what the applicable standards are for determining where the "claim arose" for purposes of § 1391(b). *See Pfeiffer v. International Academy of Biomagnetic Medicine*, 521 F.Supp. 1331, 1340 (1981). This confusion has been further heightened by the United States Supreme Court's pronouncement in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

Prior to the *Leroy* decision, the most widely used test for determining where the claim arose in multi-district venue cases was the "substantial contacts" or "weight of the contracts" approach. This test was first espoused in *Philadelphia Housing Authority v. American Radiator and Standards Sanitary Corporation*, 291 F.Supp. 252 (E.D.Pa.1968), in which the Court reasoned that:

"[I]t is submitted that 'where the claim arose' should be dependent upon where the contacts weigh *most* heavily. A 'weight of contacts' test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was significant and substantial element of the offense, then venue would be in that district. Conversely, if one insignificant sale was made in a district, ... venue would not lie there. Similarly, if a meaningless or insignificant meeting of the conspirators took place in a certain district, venue would not exist there either."

291 F.Supp. at 269–61. The courts in this circuit had also applied the substantial contacts or weight of the contacts approach. *See e.g. Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 529 (8th Cir.1973); *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27 (8th Cir.1973); *Arnold v. Smith Motor Co.*, 389 F.Supp. 1020 (N.D.Ia.1974).

Another test employed by the courts to determine where "the claim arose" is the American Law Institute Test ("ALI"). Under this test, which is similar to the weight of the contacts test, venue is proper in *any* district in which "a substantial part of the events or omissions giving rise to the claim occurred." ALI Study of the Division of Jurisdiction Between the State and Federal Courts, § 1303, 1314 (1969). The major purpose of the ALI test was to liberalize the weight of the contacts test by insuring that venue would be proper in more than one district by emphasizing the word "any" instead of "most". *See Pfeiffer v. International Academy of Biomagnetic Medicine*, 521 F.Supp. 1331, 1339. This ALI test was also noted and applied in pre-*Leroy* Eighth Circuit cases. *See Cochrane v. Iowa Beef Processors*, 596 F.2d 254, 261 (8th Cir.1979) (applying the ALI test in addition to the weight of contacts test); *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir.1973) (noting but not necessarily applying the ALI test).

Another major pre-*Leroy* test, applied primarily in tort actions, is the place of the injury test. Under this approach, the claim arose in the district where the injury occurred. *See Iranian Shipping Lines, S.A. v. Moraites*, 377 F.Supp. 644 (S.D.N.Y. 1974); *Albert Levine & Associates v. Bertoni & Cotti*, 314 F.Supp. 169 (S.D.N.Y. 1970); *Rosen v. Savant Instruments, Inc.*, 264 F.Supp. 232 (E.D.N.Y.1967).

The application of these varying approaches in determining where the claim arose led to confusion on the part of the courts as to which standard was more in line with the Congressional intent in enacting § 1391(b). This confusion was evidenced by the Eighth Circuit Court of Appeals in *Cochrane v. Iowa Beef Processors*, 596 F.2d 254 (8th Cir.1979).

In *Cochrane*, a panel for the Eighth Circuit noted that the federal courts have developed varying standards for determining where the claim arose. According to the panel, the "principal ones are: (1) the 'weight of contacts' rule; (2) the 'place of injury' rule; and (3) the American Law Institute Rule." *Id*, at 260. Apparently uncertain as to which rule to apply, the panel applied all three rules and concluded without explanation that "under any of the federal procedural standards mentioned above" the claim arose in the Southern District of Iowa. *Id.* at 261.

Because of the uncertainty surrounding the determination of where the claim arose, this Court and other federal courts were indeed hopeful that this confusion would be cleared up by the enunciation of an applicable test when the Supreme Court decided *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). However, not only did *Leroy* not provide a clear standard for determining where the claim arose, but it also has opened the way for a number of confusing and inconsistent standards as to where a claim arises under § 1391(b).

In *Leroy*, plaintiff, a Texas corporation, attempted to make a tender offer for the purchase of the stock of a company having substantial assets in Idaho. Plaintiff filed the required documents with the Securities Exchange Commission and also filed documents in Idaho in order to comply with Idaho's take-over statute. Idaho officials objected to the filing and delayed the effective date of the tender offer.

Plaintiff then filed suit in the Northern District of Texas to restrain the Idaho state officials from applying the Idaho take-over statute to prevent plaintiff from making a tender offer. Based on defendants' motion to dismiss for lack of venue, the District Court for the Northern District of Texas found that venue was improper under § 1391(b) because the claim did not arise in Texas. The district court did decide, however, that venue could be sustained under

the special venue provisions of Section 27 of the Securities Exchange Act of 1934.

On appeal, the Fifth Circuit Court of Appeals held that venue was proper under § 1391(b) and Section 27, reasoning that because the allegedly invalid restraint against plaintiff corporation occurred in Texas, it was the district in which the claim arose. *Great Western United Corp. v. Kidwell,* 577 F.2d 1256, 1265–1274 (5th Cir. 1978).

On appeal to the Supreme Court, the Court reversed the Court of Appeals and held that venue did not lie in the Northern District of Texas under either of the statutes. In reference to 28 U.S.C. § 1391(b), the Court stated:

> "The statute allows venue in 'the judicial district .. in which the claim arose.' Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a whole list of different districts. *Denver & R.G.W.R. Co. v. Railroad Trainmen,* 387 U.S. 556, 560 [87 S.Ct. 1746 1748, 18 L.Ed.2d 954]. Rather, it restricted venue to the residence of the defendants or to 'a place which may be more convenient to the litigants'—i.e. both of them—'or to the witnesses who are to testify in the case.' S.Rep. No. 1752, 89th Cong.2d Sess. 3 (1966). *See Denver & R.G.W.R. Co., supra,* at 560 [87 S.Ct. at 1748]. *See also Brunette Machine Works v. Kochum Industries,* 406 U.S. 706 710 [92 S.Ct. 1936, 1939, 32 L.Ed.2d 428]. In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that *in the unusual case* in which it is *not clear* that the claim arose only in one specific district, a claimant may chose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)— may be assigned as the locus of the claim. Cf. *Branden v. 30th Judicial Circuit of Ky.,* 410 U.S. 484, 493–494 [93 S.Ct. 1123, 1128–29, 35 L.Ed.2d 443]."

*Leroy v. Great Western United Corp.,* 443 U.S. at 184–85, 99 S.Ct. at 2717. (emphasis added).

The Court went on to conclude that this case was not the "unusual" case, reasoning that the District of Idaho was the only obvious forum since Idaho is where the Idaho takeover statute had its impact on plaintiff. *Id.* at 185, 99 S.Ct. 2718. Thus, the Court held that the District of Idaho is the only district in which "the claim arose" within the meaning of § 1391(b).

The *Leroy* decision has been highly criticized for a number of reasons. First, the court referred to virtually none of the several tests used by the lower federal courts that had construed the "claim arose" language, thereby making it difficult to determine whether the "equal plausibility" test was meant to replace other approaches (like the weight of the contacts test) or whether it was simply one prong in the venue analysis. *See e.g. Pfeiffer v. International Academy of Biomagnetic,* 521 F.Supp. 1331, 1343 (W.D.Mo.1981). Second, other federal courts which have attempted to determine where the claim arose since *Leroy* have expressed their dismay with the decision because of the court's failure to articulate a clearer standard. *See Cheeseman v. Carey,* 485 F.Supp. 203, 213 (S.D.N.Y.1980) ("The difficulties posed by *Leroy* seem certain to make venue issues an even greater problem for lower federal courts than they were before the Supreme Court spoke."). Third, commentators have noted that the Court did not define the "unusual case" in which a claim may be said to arise in more than one district, concluding that the decision has raised more questions than it has answered. *See* 15 *Wright, Miller & Cooper,* Federal Practice and Procedure: Jurisdiction, § 3806 at 7 (1980 Supp.).

Hence, the fallout from the *Leroy* decision has been a number of inconsistent and varying applications (and misapplications) of the standards enunciated under the

equal plausibility test. One approach taken by the courts is to avoid deciding the question of whether *Leroy* indirectly overruled and replaced the other approaches by analyzing each case under both the weight of the contacts test and the equal plausibility test. *See e.g. Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 760 F.2d 312, 317, 245 U.S.App.D.C. 242, (1985) ("We need not decide whether the [weight of the contacts] formulation is compatible with that of *Leroy....*"); *Kramer v. Pittstown Point Landings, Ltd.,* 637 F.Supp. 201, 204 (N.D.Ill.1986) (applying the equal plausibility factors and the weight of the contacts test without reconciling the two tests); *District No. 1, Pacific Coast District, M.E. B.A. v. State of Alaska,* 682 F.2d 797, 799 (9th Cir.1982) ("[I]t is unclear what effect *Leroy* had on the 'substantial contacts' test. However, we need not decide that question in this case."); *Leidholdt v. L.F.P., Inc.,* 647 F.Supp. 1283 (D.Wyo.1986) (applying both the equal plausibility and the weight of the contacts test); *Miller Brewing Co. v. Landau,* 616 F.Supp. 1285 (E.D.Wis.1985) (finding venue proper under weight of contacts test and equal plausibility test).[3]

Another approach taken by courts is to analyze the case under the weight of the contacts only and simply ignore *Leroy's* equal plausibility factors. *See e.g. Kupcho v. Steele,* 651 F.Supp. 797 (S.D.N.Y.1986) (applying weight of the contacts test even though *Leroy* cited); *Champion International Corp. v. Bennett Forest Industries,* 637 F.Supp. 170 (D.Mont.1986) (applying weight of the contacts test without discussion of *Leroy*'s equal plausibility standards); *In re Nine Mile Ltd.,* 692 F.2d 56 (8th Cir.1982) (applying the weight of the contacts test).

Another approach taken by the courts is to analyze the case under the factors espoused in *Leroy* and to ignore the contacts that the cause of action has with the particular district. This approach was one that was recently taken by the Eighth Circuit Court of Appeals in *Maybelline Co. v. Noxell Corporation,* 813 F.2d 901 (8th Cir., 1987).[4] In *Maybelline Co.,* the court applied the equal plausibility factors to determine that venue was improper in the Eastern District of Arkansas. The Court, however, did not directly decide the question of whether *Leroy* was consistent or inconsistent with the weight of the contacts test. Rather, the court, in a footnote, noted that, "we conclude that we must follow the Supreme Court's interpretation of section 1391(b) in *Leroy* in our review of this section 1391(b) issue, and thus *Leroy* represents the correct standard for determining whether Maybelline's claim arose in the Eastern District of Arkansas." *Maybelline* at p. 906, n. 8. *See also Transistor Device, Inc. v. Tracor, Inc.,* 654 F.Supp. 601, n. 4 (E.D.N.Y.1987) ("Whether or not this test is compatible with the approach mandated by *Leroy,* the courts in this circuit now exclusively apply the *Leroy* test"). However, the Court in *Maybelline,* like the courts in other circuits, while acknowledging that *Leroy* was controlling, did not decide the question of whether *Leroy* overruled the weight of the contacts analysis. Thus, this question becomes one for this Court to decide. If *Leroy* did overrule those cases applying the weight of the con-

---

**3.** The problem with this approach is that attorneys become bound to argue in very lengthy and confusing briefs (such as those submitted by the parties in this case) how venue is proper (or improper) under the weight of the contacts test, the equal plausibility test and the ALI test.

In addition, courts like this one are forced to proceed haphazardly through a maze of varying (and often inconsistent) standards, uncertain of which particular standard comports with both the legislative intent behind the enactment of § 1391(b) and the Supreme Court's interpretation of this venue provision in *Leroy.* Therefore, in order to provide some kind of guidance for the courts and attorneys in their analysis of

such a basic precept like venue, this Court feels compelled to provide some answers to the many unanswered questions left after the Supreme Court's decision in *Leroy.*

**4.** In *Maybelline Co.,* plaintiff sought to enjoin defendants Noxell Corporation and SSC & B Lintas Worldwide from making false representations concerning Noxell's "Cover Girl Clear Lash Mascara," which was claimed to be a waterproof mascara. The court applied the factors set forth in *Leroy* and concluded that venue in the Eastern District of Arkansas would be improper since the claim did not arise in that district. *Maybelline,* at pg. 907.

tacts test, then any reference to the contacts that the defendants have with the Western District of Missouri become irrelevant under the *Leroy* equal plausibility test since the only relevant factors would be the convenience of the defendants, the availability of witnesses and the accessibility of other relevant evidence. If *Leroy* did not overrule the weight of the contacts test and other tests, then a further question for the Court is how the two tests can be reconciled analytically and applied cohesively in determining where the claim arose under § 1391(b).

After a careful examination of the language in the *Leroy* opinion, it is the conclusion of the Court that *Leroy* did not overrule those cases applying the weight of the contacts test. The Supreme Court in *Leroy* specifically stated that only in the "unusual case" where it is "not clear where the claim arose" does the equal plausibility factors become relevant. Thus, it would appear that in those other not-so-unusual cases where it is clear that the cause of action arises in one of a number of possible districts (which constitutes the great bulk of venue cases before the district courts) the holding in *Leroy* and the equal plausibility standard would not be applicable.[5] Therefore, the task before the Court is to determine the standards to be applied in determining when venue *clearly* arises in one of a number of possible districts.

 Having carefully examined the varying standards applied by the federal courts, both before and after *Leroy*, this Court concludes that the best approach in determining where the claim arose under § 1391(b) is a three-step line of analysis. The first question for the Court when confronted with a multidistrict venue situation is to determine whether the contacts with a particular district are "miniscule" or minor, or whether the contacts are "significant and substantial." If the contacts with a particular forum are deemed to be miniscule, then the claim cannot be said to have arisen in that district. On the other hand,

if the contacts with a particular forum are deemed to be "significant and substantial," then at that point the weight of the contacts become relevant. *See Eaby v. Richmond*, 561 F.Supp. 131, 139–140 (E.D.Pa. 1983). ("[R]esolution of this issue requires initial reference to the complaint for a determination of whether it [complaint] alleges that defendants engaged in some significant or substantial conduct within this district. Only if our inquiry yields an affirmative answer, should we analyze the 'significance' and 'weight' of the alleged contacts.") *See also Catsimatidis v. Innovative Travel Group, Inc.*, 650 F.Supp. 748, 752 (S.D.N.Y.1986) (Multidistrict venue permissible only where the claim has very substantial contacts with, or a close relationship to, each of the districts claimed as potentially appropriate); *Champion International Corp. v. Bennett Forest Industries*, 637 F.Supp. 170 (D.Mont.1986) (Telephone conversations and negotiation within the district 'minimal' and, thus, venue improper).

Once it has been determined that there are two or more districts with "significant and substantial" contacts with plaintiff's claim, then the next step for the Court is to weigh the contacts to determine which district has the *most* significant contacts. Only when it is determined, based on this weighing process, that it is "unclear" which district has the most significant contacts does the equal plausibility factors set forth in *Leroy* become relevant.

The third line of inquiry, which arises in these "unclear" cases, is whether two or more of the districts can "with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of the other relevant evidence, and the convenience of the defendant (but *not* the plaintiff)" be assigned as the locus of the claim. *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717. If so, then plaintiff may choose between either of the two or more possible districts. *See e.g. Checki v. Webb*, 785 F.2d 534 (5th Cir.1986).

---

**5.** At least one court has so interpreted *Leroy*. *See e.g. American Carpet Mills v. Gunny Corporation*, 649 F.2d 1056 (5th Cir.1981) (concluding that this case was not the "unusual case," and, thus, *Leroy* factors not applied).

Applying the foregoing tests to the facts of this case, the Court concludes that venue in this case would not be proper under § 1391(b) in the Western District of Missouri. First, of the three possible districts in which venue could lie, Arizona, Missouri or Florida, the only states with "significant and substantial" contacts with plaintiffs' claims are Missouri and Florida. Although plaintiffs were initially solicited by defendants at a seminar in Phoenix, Arizona, and the initial misrepresentations were allegedly made there, these contacts were "miniscule" when compared with those contacts with Missouri and Florida.

■ According to plaintiffs' complaint, telephone negotiations took place between plaintiffs in Missouri and defendants in Orlando, Florida, in which defendants Brown and Arnold allegedly reaffirmed the initial misrepresentations made in Phoenix. It was these misrepresentations that eventually enticed plaintiffs to go to Orlando, Florida in order to examine the defendants' operation. In addition, certain mailings were made to plaintiffs in Missouri. Defendants also allegedly shipped a sample machine from Florida to plaintiffs in Missouri. As to the contacts with Florida, plaintiffs went to visit defendants Brown and Arnold at their offices in Orlando. The parties undertook negotiations in Orlando and defendants allegedly reaffirmed all of their previous misrepresentations. The final agreement executed by the parties provided that the agreement would be deemed executed in Florida and would be governed by the laws of Florida. Finally, plaintiffs wired money from Missouri to defendants in the State of Florida. Therefore, the Court concludes that while Missouri's and Florida's contacts are "significant and substantial," Arizona's contacts with plaintiffs' claims are relatively "miniscule" and, thus, Arizona could not properly be assigned as the district where the cause of action arose.

■ Second, the Court concludes that under the weight of the contacts test, venue clearly lies in the Northern District of Florida rather than the Western District of Missouri. The only contacts that Missouri has with plaintiffs' claims are the fact that the plaintiffs are from Missouri, telephonic communications were made by defendants from outside Missouri to plaintiffs in Missouri, certain mailings were made by defendants from Florida to plaintiffs in Missouri, and one sample machine was shipped to plaintiffs in Missouri. As to the telephonic communications and mailings, the courts have consistently held that these acts, which were performed outside of this district, are an improper basis for venue under § 1391(b). *See Champion International Corp. v. Bennett Forest Industries,* 637 F.Supp. 170 (D.Mont.1986); *Follett College Stores Corp. v. Fernandez,* 587 F.Supp. 1051 (N.D.Ill.1984); *Eaby v. Richmond,* 561 F.Supp. 131, 140 (E.D.Pa.1983). Additionally, the mere fact that plaintiffs are from Missouri does not make Missouri the proper place for venue purposes. *See Leroy v. Great Western United Corp.,* 443 U.S. at 185, 99 S.Ct. at 2717 ("[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.")

In contrast, Florida appears to have the *most* significant contacts with plaintiffs' claims. Plaintiffs went to Florida to visit defendants. Negotiations took place in Florida. The final agreement between the parties was executed in Florida. The misrepresentations that prompted plaintiffs' visit to Florida were reiterated during these Florida negotiations. All of the mailings and the shipment of one sample machine originated in Florida. Finally, seven counts of plaintiffs' fifteen-count complaint are based on Florida anti-fraud statutes. Therefore, it appears that under the weight of the contacts test, the Northern District of Florida clearly has more significant contacts than this district and, thus, the cause of action arises in the Northern District of Florida under § 1391(b).[6]

---

**6.** Since venue "clearly" lies in the Northern District of Florida, then *Leroy's* equal plausibility test does not apply to this case. However, even under *Leroy,* venue appears to properly lie in the Northern District of Florida since the accessibility of all the relevant evidence, location of the witnesses and the convenience to defendant

### 3. Venue under § 1391(c)

■ Plaintiffs also argue that venue is proper in the Western District of Missouri under § 1391(c) which provides that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is *doing business.*" (emphasis added). Since Ramm is incorporated under the laws of Florida and is not licensed to do business in Missouri, then the Court must determine whether defendant corporation is "doing business" under § 1391(c).[7]

The crux of plaintiffs' argument is that since defendant Ramm is subject to Missouri's long-arm statute for personal jurisdiction purposes, then Ramm is "doing business" under the meaning of § 1391(c). *See e.g., Oral-B Laboratories, Inc. v. Mi Lor Corp.,* 611 F.Supp. 460 (S.D.N.Y.1985); *Cumis Insurance Society, Inc. v. South-Coast Bank,* 587 F.Supp. 339 (N.D.Ind. 1984). However, in light of the Eighth Circuit Court of Appeals' recent pronouncement in *Maybelline Co. v. Noxell Corp.,* 813 F.2d 901 (8th Cir.1987), the Court finds that venue is likewise improper under § 1391(c).

In *Maybelline Co.,* the court was faced with the question of whether it is sufficient under § 1391(c) to meet due process jurisdictional standards for "doing business" or whether a higher level of activity within the district must be demonstrated. After a lengthy analysis of the conflicting views amongst the various circuits, the court held: (1) that since the doctrines of personal jurisdiction and venue rest on different considerations, the standards for analyzing the two should be different; and (2) that "doing business" for venue purposes should be subject to a *higher standard* than that for personal jurisdiction. *Id.* at 904. Borrowing the test set forth in *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 954 (1st Cir.1984), the court held that: " 'doing business' in a district for purposes of Section 1391(c)

means 'engaging in transactions there to such an extent and of such a nature that the state in which the district is located *could* require the foreign corporation to qualify to do business there." *Maybelline,* at 905. The court also cautioned that venue under this standard is only proper when a "defendant's business in a district is *sufficiently intrastate and localized* " within that state. (emphasis added). *Id.,* at 904; *see also Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 33, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974).

Applying this standard to the facts of this case clearly demonstrates that venue is improper in this district under § 1391(c). Ramm is a Florida corporation with its principle place of business in Florida. Ramm has no office or property in Missouri. Ramm has no agent or employees in Missouri. Ramm has not solicited any business in Missouri. In fact, plaintiffs have not alleged that any of Ramm's agents or employees have ever set foot in Missouri. *See Cardwell v. Investor's Analysis, Inc.,* 620 F.Supp. 1395, 1398 (D.C.D.C.1985) ("Generally, in cases in which courts have found corporations to be 'doing business' in a given district involve substantial contacts, such as employing an agent, maintaining an office, or hiring a distributor"). *See also Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1523 (11th Cir.1985). As previously indicated, the only contacts that defendants have with Missouri is the fact that telephone calls were made to plaintiff here, mailings were made to plaintiffs here and one sample machine was shipped to plaintiffs in Missouri. Surely, these contacts are insufficient intrastate and localized business within this state such that the State of Missouri could constitutionally require Ramm to obtain a license to do business in Missouri. *See Critzas Industries v. Waterway-Creve Coeur,* 652 F.Supp. 56, 62 (E.D.Mo.1986). Thus, the Court concludes that Ramm is not "doing business" within the meaning of § 1391(c).

---

seem to point to the Northern District of Florida as the appropriate forum for venue purposes.

7. Plaintiffs have pleaded the alter ego liability of Brown, Arnold and Ramm. Under this theory, if venue is appropriate as to Ramm, it is likewise appropriate as to Brown and Arnold.

## Conclusion

Having determined that venue does not properly lie in the Western District of Missouri under 18 U.S.C. § 1965(a), 28 U.S.C. § 1391(b) or § 1391(c), the Court, pursuant to 28 U.S.C. § 1406(a)[8], finds that transfer to the United States District Court for the Northern District of Florida, rather than dismissal, is in the best interest of the parties and in the best interest of justice.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss for improper venue is denied. It is further

ORDERED that pursuant to 28 U.S.C. § 1406(a) this action be transferred to the United States District Court for the Northern District of Florida. It is further

ORDERED that all other pending motions are denied without prejudice to their renewal after transfer.

---

**8.** 28 U.S.C. § 1406(a) allows a district court, in which a case is filed improperly (from a venue standpoint), to dismiss or transfer the case to another district wherein venue is proper.