ANCHOR GLASS CONTAINER
CORPORATION, Plaintiff,

v.

STAND ENERGY CORPORATION, Matt-
hias Toebben, Robert P. Robison and
Judith A. Phillips, Defendants.

Civ. A. No. J87–0500(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 28, 1989.

Ross F. Bass, Jr., Jackson, Miss., for plaintiff.

Dean Holleman, Gulfport, Miss., John H. Holloman, III, W. Whitaker Rayner, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

There are pending before this court a number of motions by the parties including a motion by defendants Stand Energy Corporation (Stand), Matthias Toebben, Robert P. Robison and Judith A. Phillips to dismiss, as well as cross motions by plaintiff Anchor Glass Container Corporation (Anchor) and defendants for partial summary judgment. Presently before the court for consideration is the defendants' motion to dismiss. Anchor Glass has responded to that motion and the court has considered the memoranda of authorities submitted by the parties.

Anchor brought this action alleging that it is the victim of an interstate scheme to defraud perpetrated by defendants during the course of which defendants "committed continuous acts of mail and wire fraud and commercial bribery" in order to "obtain lucrative natural gas supply contracts at inflated prices, and then [to conceal] what had happened." The factual basis alleged by plaintiff is as follows: Anchor is the successor in interest to Diamond–Bathurst, Inc. (Diamond).[1] Diamond was and Anchor now is in the business of manufacturing glass containers, a process requiring large quantities of natural gas. Beginning in 1985, Diamond entered into a series of long term contracts with Stand under which Stand was to supply natural gas to Diamond's manufacturing plants in California, Texas, New York, Illinois, Indiana and Mississippi. Tom Conrad, Diamond's director of Energy Resources until his termination in 1987, was responsible for negotiating these agreements on Diamond's behalf. According to plaintiff, Conrad and the defendants "combined and conspired to conceive and embark upon a scheme to fraudulently induce Diamond into executing" the agreements at inflated prices for a fixed term of years. Pursuant to this scheme, Conrad negotiated a number of such agreements on behalf of Diamond and received from Stand secret payments totalling over $85,000 through a company called Eastern Energy Resources, Inc., which was established by Conrad and Stand for the purposes of Conrad's receipt and concealment of those payments. When it was learned in June 1987 that Diamond was to merge with Anchor, defendants ceased making payments to Conrad fearing that their scheme would be discovered.

Immediately following the Anchor/Diamond merger, Anchor brought this declaratory judgment action against Stand requesting that the court terminate Anchor's contractual obligations to Stand. Stand answered and counterclaimed against Anchor for breach of contract. Subsequently, after Conrad revealed to Anchor representatives his having received secret payments from Stand,[2] Anchor amended its complaint to charge defendants with violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961–68, and with commercial bribery in violation of the Clayton Act, 15 U.S.C. § 2(c), as amended by the Robinson–Patman Act, 15 U.S.C. § 13(c), common law fraud, intentional or negligent misrepresentation, and breach of fiduciary duties and duties of good faith and fair dealing. By that amendment, plaintiff also joined as defendants in its RICO claim three directors of Stand, Toebben, Robison and Phillips.[3] The defendants have moved to dismiss this action and as grounds assert, *inter alia*, that this court lacks personal jurisdiction or venue over all

1. On August 1987, Anchor merged with and assumed the assets and liabilities of Diamond.

2. According to Anchor, Conrad disclosed the fact of the secret payments only after Anchor entered into a covenant not to sue agreement with Conrad and Eastern Energy Resources.

3. The complaint alleges that at all relevant times, Toebben was the chairman of Stand's board of directors, Robison was president of and a member of the board of directors of Stand and Phillips was executive vice-president and a member of Stand's board of directors.

or some defendants and that therefore this action should be dismissed or, alternatively, venue should be transferred pursuant to 28 U.S.C. § 1404(a). Because the court is of the opinion that the questions raised by defendants concerning the propriety of venue and the exercise of personal jurisdiction over the individual defendants are dispositive of this motion, the court does not reach the remaining issues presented by the motion.[4]

In its complaint, Anchor Glass asserts that jurisdiction is conferred on this court by 28 U.S.C. § 1332 (diversity jurisdiction),[5] 28 U.S.C. § 1331 (federal question jurisdiction), 18 U.S.C. § 1964 (RICO), 15 U.S.C. § 15 (Robinson–Patman) and 28 U.S.C. § 1337 (commerce and antitrust regulations). Further according to plaintiff, its state law claims fall within the doctrine of pendent jurisdiction. Here, it is clear that this court has subject matter jurisdiction over plaintiff's claims. This court must determine whether the Southern District of Mississippi is an appropriate venue for this action and the related issue of whether this court has personal jurisdiction over the individual defendants. While normally, issues of personal jurisdiction are considered in advance of venue issues, in this case, the decision on the venue question directly determines the propriety of the court's exerting personal jurisdiction over these defendants and for this reason, will be considered first.

The court first observes that the corporate defendant, Stand, did not challenge venue or the sufficiency of *in personam* jurisdiction until defendants moved collectively to dismiss plaintiff's first amended complaint. At that time, this action had been pending against Stand for almost a year. Stand is now taking the position that it is not subject to the personal jurisdiction of this court and that venue is improper as to it for the same reasons that venue is improper as to the individual defendants. Stand attributes its failure to raise these issues earlier, i.e., when it first answered the complaint and asserted its counterclaim against Anchor, to a "mistaken belief" by Stand's counsel concerning Stand's contacts with the State of Mississippi.[6] In the court's opinion, Stand's "mistaken" failure to challenge this court's personal jurisdiction or venue of this action at the first—or even subsequent—opportunity to do so, operates as a waiver of any objection to these matters. Accordingly, the court proceeds to consider this motion only as it relates to the individual defendants.

For cases in which the court's jurisdiction is not founded solely on diversity of citizenship, venue is proper "only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." 28 U.S.C. § 1391(b).[7] Since jurisdiction here is not

---

**4.** Other grounds raised by defendants for dismissal are that
(1) Anchor has failed to state a claim for violation of RICO upon which relief can be granted and therefore the RICO claim should be dismissed;
(2) As to the alleged antitrust violations, Anchor lacks standing to sue since it has not alleged an anticompetitive injury necessary to sustain its cause of action;
(3) Anchor has failed to state a claim for relief in alleging fraud or in the alternative has failed to plead fraud with the requisite specificity; and
(4) Anchor has not sufficiently alleged the existence of a fiduciary relationship between Stand and Diamond.

**5.** Anchor is a Delaware corporation with its principal place of business in Florida. Stand is a Kentucky corporation for which Cincinnati, Ohio is its principal place of business. Defendants Toebben and Phillips are Kentucky resi-

dents while Robison is an Ohio resident. Thus, there does exist complete diversity of citizenship.

**6.** In its answer to the original complaint in this cause, not only did Stand make no objection to personal jurisdiction, service of process or venue, but it in fact affirmatively alleged that the court had "jurisdiction of the parties and the subject matter" of its counterclaim. Moreover, in its amended counterclaim filed just one month before the present motion, Stand repeated the same allegation.

**7.** As to plaintiff's claims under RICO, the law does provide otherwise. As discussed *infra*, 18 U.S.C. § 1965(a) is a specific venue statute applicable to claims under RICO. However, the RICO venue provisions found in that section are not exclusive but rather "supplement" or "liberalize" those found in 28 U.S.C. § 1391(b). *See Miller Brewing Co. v. Landau,* 616 F.Supp. 1285,

founded solely on diversity of citizenship and because defendants do not reside in this district, the pertinent inquiry is whether it can be said that plaintiff's claims arose in the Southern District of Mississippi such that venue would be proper in this district as to all defendants.

Plaintiff takes the position that its claims arose in more than one district and that it was free to choose among those districts the forum for its action, a choice which obviously was Mississippi. Although section 1391 does speak in terms of "the" judicial district in which the claim arose, the United States Supreme Court in *Leroy v. Great Western United Corporation,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), made the following observation:

> Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to ... give [plaintiffs] an unfettered choice among a host of different districts.... In our view, ... the broadest interpretation of the language in § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximate equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy,* 443 U.S. at 183–85, 99 S.Ct. at 2716–17. In this case, it is apparent that there was some activity relative to Anchor's claims, to a greater or lesser extent, in at least nine states, including Mississippi. These include the states in which the subject contracts were negotiated and to be performed, and in which the alleged illegal payments to Conrad were made. The question whether plaintiff's claims may be said to have arisen in one or more of those states, and in particular, Mississippi, is determined by a "weight of contacts" approach under which venue is said to be proper in a district if the parties have a significant relationship to that district or if such a substantial portion of the claim occurred there that it could be said to have arisen there. *See Miller Brewing,* 616 F.Supp. at 1291; *Follett College Stores Corp. v. Fernandez,* 587 F.Supp. 1051, 1053 (N.D.Ill.1984). To accept the conclusion urged by Anchor that this district is one in which its claim arose would, in this court's opinion, require an overly broad application of the weight of contacts test in which any contact with the district, however slight, would provide a sufficient basis to justify finding that the claim arose in that district. The court cannot adopt such an expansive view and finds instead that the more reasonable approach to the "weight of contacts" determination is as follows:

> The first step is to determine whether the contacts with the district are "miniscule" or "significant and substantial." Once it has been determined that there are two or more districts with "significant and substantial contacts" with plaintiff's claim, the court must determine which district has the most significant contacts. Only if it is "unclear" which district has the most substantial contacts is it necessary to decide whether two or more districts can "with approximate equal plausibility" be assigned as the locus of the claim.

*Dody v. Brown,* 659 F.Supp. 541, 550 (W.D. Mo.1987).

1291 (E.D.Wis.1985); *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1133 n. 6 (D.Mass.1982) (appropriate to inquire whether action maintainable under section 1391 where venue improper under special RICO venue section); *Farmers Bank of State of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278, 1280–81 (D.Del.1978). *But see Clement v. Pehar,* 575 F.Supp. 436, 439 (N.D.Ga.1983) (claims under RICO required to satisfy independent venue requirements of 18 U.S.C. § 1965). Thus, while 28 U.S.C. § 1391(b) controls venue for the remaining claims, it is, while relevant, not dispositive of the determination of venue for the RICO claim. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3808, at 80 (2d ed. 1986) (where multiple claims joined, venue must be proper for each).

Utilization of this more focused analysis leads to the clear conclusion that Mississippi is not a state in which plaintiff's RICO claim, or any of its claims, arose. Each of Anchor's claims is specifically premised upon Stand's allegedly having made payments to an employee of plaintiff, Conrad, in exchange for his negotiating favorable contracts with Stand on behalf of plaintiff; in connection with those negotiations, defendants, in conjunction with Conrad, are alleged to have defrauded plaintiff in violation of state and federal law and, in the making of the payments to Conrad, defendants are alleged to have committed commercial bribery in violation of federal law. The focal point of these claims is not so much the contracts themselves but the alleged arrangement between defendants and Conrad and the making of the contracts. As to the arrangement, defendants assert and plaintiff has not disputed that negotiations for each of the subject contracts occurred between Chattanooga, Tennessee, where Conrad was employed by plaintiff, and Cincinnati, Ohio, Stand's principal place of business, or between Cincinnati and Malvern, Pennsylvania, Diamond's corporate headquarters. Further, the payments to Conrad were made either in person or to a bank in Kentucky. Any nexus between Mississippi and Anchor's causes of action stems solely from the fact that Mississippi is one of the states in which Anchor has a glass manufacturing plant for which it contracted through the Conrad negotiations to obtain natural gas from Stand. Similar contracts were executed for plants located in New York, Texas, Indiana, Illinois and California (the contract states). Under these circumstances, while it might be said that Kentucky, Tennessee, Ohio and/or Pennsylvania (the negotiation/payment states) have significant or substantial contacts with plaintiff's claims, the same does not hold true with reference to the contract states. When one compares the relationship of the parties to the contract states and the negotiation/payment states, one could reasonably conclude that the contacts with the contract states are minimal and insubstantial. To allow plaintiff to select among each of the involved states, regardless of the comparative significance of their involvement, would truly amount to giving plaintiff "an unfettered choice among a host of different districts," *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717, a result condemned by *Leroy*. At the very least, it is certainly the case that of the involved states, Mississippi does not have the *most* significant or substantial contracts; it is, in essence, a forum which is "unrelated to the heart of the instant lawsuit." *Follett College*, 587 F.Supp. at 1053. Thus, under the analysis suggested above, the court does not reach the issue of whether Mississippi is an *equally* plausible locus of the claim in terms of availability of and accessibility to witnesses and evidence or convenience to defendants since Mississippi is not a plausible locus of the claim. Because the court finds that the claim did not arise in Mississippi, venue is therefore not proper as to any of the claims against any of the individual defendants under 28 U.S.C. § 1391.

■ In addition to the venue provision of section 1391, a special venue statute for RICO actions is found at 18 U.S.C. § 1965(a), which states that a civil action against a person under RICO may be instituted in the district court of the United States for "any district in which the person resides, is found, has an agent, or transacts his affairs." Here, none of the defendants resides, is found or has an agent in Mississippi and only one of the defendants, Stand, has transacted any business here. There has been a suggestion by plaintiff that two of the individual defendants, Robison and Phillips, transacted business here by virtue of numerous trips to Gulfport and Jackson, Mississippi between the fall of 1985 and the spring of 1987 in connection with the Diamond/Stand Mississippi natural gas contract. However, in the court's opinion, the "transacts his affairs" language of the statute refers to personal affairs of the defendant, not affairs he may have transacted on behalf of his employer. *See Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*, 584 F.Supp. 36, 39 (S.D.N.Y.1983). Despite plaintiff's argument to the contrary, there can be little question but that the activities—*limited* activities—of Robison and

Phillips in Mississippi were not in connection with their "personal affairs" but rather were on behalf of Stand. *Cf. Miller Brewing, Inc. v. Landau,* 616 F.Supp. 1285, 1289–90 (E.D.Wis.1985) (where corporation is mere shell for its owner, employee/owner's actions on behalf of shell may be viewed as his own for purposes of subjecting him personally to court's jurisdiction).[8] In any event, the "transacts his affairs" language of the statute has been construed to require a level of regular, substantial and continuous activity within the forum so as to establish venue. See *Caldwell v. Palmetto State Savings Bank,* 811 F.2d 916, 918 (5th Cir.1987); *Dody v. Brown,* 659 F.Supp. 541 (W.D.Mo.1987); *Miller Brewing,* 616 F.Supp. at 1288. The activity of these two defendants clearly does not rise to this level. Instead, their contacts with Mississippi are more appropriately characterized as isolated and sporadic. *See Sunray Enterprises, Inc. v. David C. Bouza & Associates, Inc.,* 606 F.Supp. 116, 118 (S.D.N.Y.1984) (defendant's attendance at occasional trade fair clearly insufficient basis upon which to conclude defendant had transacted his affairs in forum). Therefore, venue is not proper on the RICO claims as to Toebben, Robison or Phillips under the provisions of 18 U.S.C. § 1965(a).[9]

However, while as to the individual defendants venue cannot properly be laid in this district under section 1965(a), section 1965(b) may be utilized to include them in this action if "the ends of justice" so require. Section 1965(b) provides:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

This section was intended to enable a plaintiff to bring before a single court for trial all members of a nationwide RICO conspiracy. *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.,* 788 F.2d 535 (9th Cir.1986); *see also Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 672 (7th Cir.1987) (section 1965(b) authorizes nationwide service of process so at least one court will have jurisdiction over everyone connected with any RICO enterprise), *cert. denied,* —— U.S. ——, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988). Thus, section 1965(b) effectively operates as a waiver of the applicable venue requirements if the "ends of justice" so require. And, by authorizing nationwide service of process, it operates in some cases to confer personal jurisdiction over defendants who would not otherwise be within the court's jurisdictional reach.[10]

---

**8.** Although Phillips, Robison and Toebben own or control all of the common stock of Stand and comprise its board of directors, plaintiff has failed to demonstrate that Stand is a "mere shell" corporation. Therefore, the rationale adopted by the court in *Miller Brewing* has no application to the facts here presented.

**9.** With the potential exception of the RICO claims, it is also clear from the preceding discussion that these defendants do not have sufficient contacts with this forum to subject them to the court's *in personam* jurisdiction. As to the RICO claims, see *infra* note 10.

**10.** Provisions in federal statutes for nationwide service of process have been held to provide a basis for the assertion of personal jurisdiction. *See, e.g., In re Chase & Sanborn Corp.,* 835 F.2d 1341, 1344 (11th Cir.) (bankruptcy rule 7004(d) providing for nationwide service of process was statutory basis for personal jurisdiction, not

state's long-arm statute), *cert. granted,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988); *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985) (same conclusion with respect to Securities Exchange Act of 1934). Thus, section 1965(b) creates personal jurisdiction by authorizing nationwide service of process. *Lisak,* 834 F.2d at 671; *Wichita Federal Savings & Loan Association v. Landmark Group, Inc.,* 657 F.Supp. 1182, 1192–94 (D.Kan.1987); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1055 (S.D.N.Y.1987). While this section permits the assertion of personal jurisdiction, the due process clause of the fifth amendment represents a limit on a federal court's power to acquire personal jurisdiction by way of nationwide service of process; however, the rule in this circuit, as in most circuits, is that in a federal question case in which nationwide service is statutorily authorized, minimum contacts with the *United States* rather than with a particular state will

A prerequisite to causing a party to be summoned before the court under the "ends of justice" provision of section 1965(b) is the presence of at least one other defendant who is properly before the court. *See Rolls–Royce*, 657 F.Supp. at 1058 n. 13 (S.D.N.Y.1987); *Farmers Bank of State of Delaware v. Bell Mortgage Corp.*, 577 F.Supp. 34, 35 (D.Del.1978) (ends of justice require summoning one nonresident defendant to district where venue is proper as to majority of defendants and where judicial economy favors trying whole action in one court). In the instant case, though one party, Stand, is properly before the court, three are not. Plaintiff's "ends of justice" argument was premised on an expectation that the court would conclude that two of the individual defendants, Phillips and Robison, have transacted business in Mississippi and are therefore properly before the court. Based on its assumption that venue was proper in this action as to a majority of the defendants, plaintiff reasoned that justice would be served by bringing before this court the sole outstanding defendant, Toebben. Since the court has rejected plaintiff's venue assertions regarding Phillips and Robison with the result that venue is not proper as to a majority of the defendants, plaintiff's "ends of justice" argument loses considerable impact.

In addition to the requirement that there be one defendant properly before the court, another factor which favors the imposition of nationwide service under the RICO statute based on an "ends of justice" finding is the lack of an alternative forum. *Butch-er's Union Local No. 498*, 788 F.2d at 539; *Miller Brewing*, 616 F.Supp. at 1290; *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F.Supp. 1453, 1459 (E.D.N.Y.1984); *Bell Mortgage Corp.*, 452 F.Supp. at 1282. Such a finding may not be made in this case since it appears that there is a venue which is appropriate as to all of the defendants, the Southern District of Ohio, in which Stand's principal place of business is located. One of the individual defendants is an Ohio resident and two live "across the river" in Kentucky but work in Ohio. Clearly, therefore, the ends of justice do not even suggest, much less require, that this court exercise jurisdiction over all of the defendants in this forum.

Since venue—and hence the exercise of personal jurisdiction—is inappropriate in this district as to the individual defendants, this case becomes a candidate for transfer to an appropriate venue, the Southern District of Ohio, and indeed the court finds that a transfer to that district rather than dismissal of these defendants should be ordered.[11]

Based on the foregoing, the court is of the opinion that this cause should be transferred to the Southern District of Ohio and it is so ordered.

---

satisfy the due process prong of the personal jurisdiction test. *See Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F.Supp. 1092, 1100 (N.D. Tex.1988) (citing *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415 (5th Cir.1986) (per curiam) (en banc), *aff'd sub nom. Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), and *Terry v. Raymond Int'l Inc.*, 658 F.2d 398 (5th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982)). It is clear here that each of the defendants has minimum contacts with the United States. *See, Terry*, 658 F.2d at 403 (United States corporation amenable to service under federal amenability standard); *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir.1979) (resident citizen of United States has sufficient contacts with United States to support fairness of exercise of jurisdiction over him by United States court); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974) (minimum contacts present where defendants reside within territorial boundaries of the United States). Accordingly, the individual defendants could be subjected to this court's personal jurisdiction with respect to the RICO claims by virtue of the nationwide service of process made available by section 1965(b) if and only if it were determined that the "ends of justice" require that result.

11. Since venue is proper in this court as to one defendant, Stand, yet improper as to the others, there is some question as to whether a transfer would be under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. However, under either statute, the court has the authority and may properly transfer the action.